IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

\* \* \* \* \* \* \* \* \*

EMMI DEE CLOUGH,                        )
                                        )        Civil No. 1:11-CV-00082-BSJ
                    Plaintiff,          )
                                        )        **MEMORANDUM DECISION**
vs.                                     )        **& ORDER ON ADMINISTRATIVE**
                                        )        **APPEAL**
MICHAEL J. ASTRUE,                      )
Commissioner of Social Security,        )
                                        )        ┌─────────────────────────────┐
                    Defendant.          )        │           **FILED**          │
                                        )        │  CLERK, U.S. DISTRICT COURT  │
                                                 │    June 14, 2012 (2:17pm)    │
                                                 │      DISTRICT OF UTAH        │
                                                 └─────────────────────────────┘

\* \* \* \* \* \* \* \* \*

Emmi Dee Clough ("plaintiff" or "claimant") filed suit seeking judicial review of the

Commissioner of Social Security's ("the Commissioner"or "defendant") decision denying her

claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under

Titles II and XVI of the Social Security Act ("the Act"), respectively.[1] The matter came before

this court for hearing on January 6, 2012. David W. Parker appeared on behalf of the plaintiff,

and Nadia N. Sullivan appeared on behalf of the Commissioner. Having considered the parties'

briefs, the administrative record, the arguments of counsel, and the relevant law, the court

AFFIRMS the Commissioner's decision.

## I. BACKGROUND

Plaintiff applied for DIB and SSI on August 1, 2008.[2] Her applications for DIB and SSI

---

[1]*See* 42 U.S.C. §§ 401 *et seq.*, 1381 *et seq.*

[2](*See* Administrative R., filed May 27, 2011 (dkt. no. 14) ("AR"), at 150, 156.)

indicate that her disability began on December 31, 2004,[3] at the age of twenty-nine.[4] Plaintiff

claims that she began to experience petit mal seizures at the age of six and that her seizures have

grown in frequency and intensity since that time.[5] Plaintiff alleges that stress, anxiety, computer

monitors, and flashing lights are capable of causing her seizures.[6] Plaintiff has not worked since

April 2010, and three different employers terminated her because of her seizures.[7] Plaintiff's

claims were initially denied on September 5, 2008,[8] and denied upon reconsideration on January

20, 2009.[9] Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ") on

January 28, 2009.[10]

A hearing was held on October 14, 2009 before ALJ Gilbert Alejandro Martinez.[11] On

March 31, 2010, the ALJ issued a decision finding plaintiff not disabled.[12] The ALJ found that

plaintiff suffered from the following severe impairments: seizure disorder and history of alcohol

and substance abuse.[13] The ALJ further noted plaintiff's history of noncompliance with seizure

---

[3](*Id.*)

[4](*Id.* at 29.)

[5](*See* Pl.'s Opening Br., filed Oct. 12, 2011 (dkt. no. 19) ("Pl.'s Br."), at 4.)

[6](*Id.* at 4.)

[7](*Id.*)

[8](AR 90, 96.)

[9](*Id.* at 102, 105.)

[10](*Id.* at 108.)

[11](*Id.* at 24.)

[12](*Id.* at 8.)

[13](*Id.* at 13.)

medications,[14] and the ALJ held that "the record does not show by credible evidence that the claimant meets the seizure listing while compliant with medications."[15] In his findings, the ALJ also relied on the medical expert's testimony, stating that plaintiff's "history of alcoholism may compromise the seizures."[16] As such, the ALJ found that plaintiff "does not meet listing 11.02 for grand mal or listing 11.03 for petit mal seizures."[17]

The ALJ also found that the plaintiff "has the residual functional capacity to perform light work as defined by 20 CFR 404.1567(b) and 416.967(b)."[18] In addition, the ALJ found that plaintiff "is capable of performing past relevant work as a fast food worker, cashier, and telephone solicitor."[19] Ultimately, the ALJ determined that plaintiff was not disabled.[20]

On March 24, 2011, the Appeals Council denied plaintiff's request for review of the ALJ's decision.[21] This denial made the ALJ's ruling the final administrative decision of the Commisioner of Social Security in this case.[22]

---

[14](*Id.* at 14.)

[15](*Id.*)

[16](*Id.*)

[17](*Id.*)

[18](*Id.*)

[19](*Id.* at 17.)

[20](*Id.* at 17–18.)

[21](*Id.* at 1.)

[22]*See* 20 C.F.R. § 404.981 (2011); *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010) ("The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision.").

## II. DISCUSSION

The Commissioner's decision is reviewed to "determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied."[23] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[24] In conducting this review, the court "may neither reweigh the evidence nor substitute [its] judgment for that of the Commissioner."[25]

In petitioning this court, plaintiff alleges six points of error: (1) that the ALJ's finding that plaintiff did not meet or equal the requirements of listings 11.02 and 11.03 is not supported by substantial evidence;[26] (2) that the ALJ failed to consider all of plaintiff's severe impairments;[27] (3) that the ALJ improperly determined that plaintiff has been non-complaint with prescribed treatment;[28] (4) that the ALJ improperly determined plaintiff's residual functional capacity;[29] (5) that the ALJ's credibility finding is not based on substantial evidence;[30] and (6) that the ALJ failed to fulfill his duty to develop the record.[31] The court will analyze points (1), (2), and (4) separately, while it will analyze points (3), (5), and (6) simultaneously.

[23]*Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); *see also Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994).

[24]*Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

[25]*Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).

[26](Pl.'s Br. at 5.)

[27](*Id.* at 6.)

[28](*Id.* at 7.)

[29](*Id.* at 10.)

[30](*Id.* at 11.)

[31](*Id.*)

4

**A. The ALJ's finding that plaintiff did not meet or equal the requirements of listings 11.02 and 11.03 is supported by substantial evidence**

This court can only review an ALJ's decision to determine "whether the correct legal standards were applied and whether the factual findings are supported by substantial evidence in the record."[32] Plaintiff does not dispute that the ALJ applied correct legal standards. As such, the only question for this court is whether the ALJ's finding that plaintiff did not meet or equal the requirements of 11.02 and 11.03 is supported by substantial evidence. This court concludes that the ALJ's finding is supported by substantial evidence.

Notably, in her opening brief plaintiff failed to describe the content of listings 11.02 and 11.03. Rather, plaintiff merely states that "it is likely that claimant meets or equals listing 11.02 and 11.03."[33] Plaintiff's failure to provide the description of listings 11.02 and 11.03 makes it difficult for the court to determine whether the ALJ's finding is supported by substantial evidence. Despite the foregoing, the court will entertain plaintiff's claims.

To show that an impairment matches a listed impairment, a claimant must "meet *all* the specified medical criteria," as an "impairment that manifests only some of those criteria, no matter how severe[], does not qualify."[34] The claimant must show that the medical criteria were met or equaled for a period of 12 continuous months.[35] Further, "an ALJ's findings at other steps of the sequential evaluation process may provide a proper basis for upholding a step three

---

[32]*Barret v. Astrue*, 340 Fed. Appx. 481, 483 (10th Cir. 2009) (unpublished disposition) (quoting *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006)).

[33](Pl.'s Br. at 6.)

[34]*Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

[35]20 C.F.R. § 404.1509 (2011); *Barnhart v. Walton*, 535 U.S. 212, 218–19 (2002).

conclusion that a claimant's impairments do not meet or equal any listed impairment."[36]

**1. Listing 11.02**

Listing 11.02 requires that the claimant demonstrate the following:

> 11.02 *Epilepsy—convulsive epilepsy, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occuring more frequently than once a month in spite of at least 3 months of prescribed treatment.* With:
>
> > A. Daytime episodes (loss of consciousness and convulsive seizures) or
> > B. Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.[37]

Although there is some evidence to suggest that plaintiff may satisfy the first part of the listing—such as when she suffered several seizures a week in February 2004[38] or three seizures in one day in July 2006[39]—the record shows, and the ALJ found, that plaintiff did not have seizures occurring more frequently than once a month *in spite of at least three months of prescribed treatment*. Indeed, the ALJ noted, and the record shows, that plaintiff was both inconsistent and noncompliant in taking her prescribed medication.[40] For instance, the ALJ noted that in August 2008, plaintiff reported she had not been on medication for three years and had only one seizure a month.[41] The ALJ also noted that plaintiff was at subtherapeutic levels of medication on February

---

[36]*Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005).

[37]20 C.F.R. pt. 404, subpt. P, app. 1, § 11.02.

[38](AR 286.)

[39](*See id.* at 351; *see also* Pl.'s Br. At 6.)

[40](AR at 15, 271, 274, 284–86, 331, 377.)

[41](*Id.* at 14, 54, 377.)

3, 2004 and reported several seizures per week,[42] but plaintiff later reported on May 17, 2004, that she had been off medication for 1½ to 2 months and reported one seizure.[43]

Further, at a time where the record shows that plaintiff was monitored and consistently medicated at prescribed levels,[44] her seizure activity did not meet the listing requirement. Indeed, the record shows that after one incident of seizure in August 2004 when plaintiff was in jail,[45] her medication was changed and a different dosage was administered,[46] after which she did not suffer another seizure while in jail.[47] Shortly after her release from jail in December 2004, plaintiff visited her physician, to whom plaintiff acknowledged that she had not had any seizure activity or adverse side effects while on the new medication administered in jail.[48] Also, from 2006 to 2008, plaintiff only reported one seizure per month, which would not qualify as a listing, even though she was not taking her medication.[49]

---

[42](*Id.* at 14, 286.)

[43](*See id.* at 14, 16, 285.)

[44](*See id.* at 63):

ALJ: Okay. But this three months you were in the county jail were you getting your medications?
PLAINTIFF: Yes. They were giving them to me.
ALJ: The county sheriff was giving them to you?
PLAINTIFF: Right.
ALJ: And you were taking it?
PLAINTIFF: Right.

[45](*Id.* at 385.)

[46](*Id.* at 282.)

[47](*Id.*)

[48](*Id.*)

[49](*Id.* at 377.)

In light of the foregoing, there is no three-month period in which plaintiff was taking her medication *as prescribed* <u>and</u> suffered seizures more than once a month. Therefore, the ALJ's finding that plaintiff did not meet the requirements of listing 11.02 was supported by substantial evidence.

In addition, plaintiff argues that the ALJ erred in failing to analyze whether plaintiff's impairment equals a listing.[50] None of the physicians who reviewed plaintiff's medical records found that the impairments equaled a listing.[51] Indeed, both Drs. Barton and Peterson completed the Disability Determination and Transmittal Forms[52] and proceeded to assess plaintiff's residual functional capacity,[53] which indicates that plaintiff did not meet *or* equal the criteria of any listing.[54] Thus, even assuming the ALJ erred by not expressly addressing whether plaintiff's impairments equaled a listing, the error was harmless[55] because it would not have changed the

---

[50]"For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Zebley*, 493 U.S. at 531.

[51](AR 57, 80–83.) "The signature of a State agency medical or psychological consultant on an SSA-831-U5 (Disability Determination and Transmittal Form) or SSA-832-U5 or SSA-833-U5 (Cessation or Continuance of Disability or Blindness) ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review." SSR 96-6p, 1996 WL 374180, at *3.

[52](AR 80–83.)

[53](*Id.* at 294–98, 382–83.)

[54]"If your severe impairment(s) does not meet or medically equal a listing in appendix 1, we will assess your residual functional capacity as provided in §§ 404.1520(e) and 404.1545." 20 C.F.R. § 404.1505(a) (2011).

[55]*See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("This Court has said that the party that seeks to have a judgment set aside because of an erroneous ruling carries the burden of
(continued...)

outcome of the disability determination.

### 2. Listing 11.03

Listing 11.03 requires that the claimant demonstrate the following:

> 11.03 *Epilepsy—nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment.* With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.[56]

The analysis under listing 11.03 is essentially the same as the analysis under 11.02, the major difference being that listing 11.03 requires a showing of more frequent (more than once weekly as opposed to more than once monthly) seizures than does listing 11.02. Because the court has already held that the ALJ's 11.02 finding—which requires less seizure frequency than does 11.03—was supported by substantial evidence, the ALJ's 11.03 finding is also supported by substantial evidence.

Further, even if plaintiff were to demonstrate seizure frequency of more than once weekly, she would still be unable to demonstrate that the seizures occurred in spite of 3 months of prescribed treatment. As the court has already discussed in the preceding section, plaintiff did not demonstrate compliance with prescribed treatment for a three-month period.

### B. The ALJ reasonably considered all of plaintiff's severe impairments in reaching his disability determination

At the second step of evaluation of disability, the ALJ should consider the medical

---

[55](...continued)
showing that prejudice resulted.") (internal quotation marks omitted).

[56]20 C.F.R. pt. 404, subpt. P, app. 1, § 11.03 (2011).

severity of the claimant's impairments, and if the claimant does not have a severe medically determinable physical or mental impairment, then the ALJ will find that the claimant is not disabled.[57]

Plaintiff asserts that the "ALJ erred in failing to find that claimant's anxiety, OCD, PTSD and depression were severe disorders."[58] Specifically, plaintiff argues that the ALJ impermissibly failed to "consider the combined effects of plaintiff's seizures and anxiety even though the record is replete with references to the interplay between her seizures and anxiety."[59]

However, any potential error by the ALJ at step two is harmless because he did not deny plaintiff's claim at step two, but rather proceeded to steps three and four of the process.[60] The Tenth Circuit has held that "any error [at step two] bec[omes] harmless when the ALJ reache[s] the proper conclusion that [a claimant] could not be denied benefits conclusively at step two and proceed[s] to the next step of the evaluation sequence."[61] This is exactly what happened in this instance.

The ALJ did not deny plaintiff's claim at step two. Rather, he next moved to step three where he analyzed whether plaintiff's impairments met listings 11.02 or 11.03.[62] When he decided that plaintiff did not meet the requirements for listings 11.02 or 11.03, he proceeded to

---

[57]20 C.F.R. § 404.1520(a)(4)(ii).

[58](Pl.'s Br. at 7.)

[59](*Id.*)

[60]"At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled." 20 C.F.R. § 404.1520(a)(4)(iv).

[61]*Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008).

[62](AR 13–14.)

step four to consider plaintiff's residual functional capacity and past relevant work.[63] It was at step four that the ALJ reasonably accommodated plaintiff's mental impairments in his residual functional capacity finding. Notably, the ALJ found that plaintiff is "moderately limited in ability to interact with the general public and to deal with stress."[64] Indeed, at step four the ALJ devoted an entire paragraph analyzing plaintiff's mental disorders and the alleged interplay with plaintiff's seizures.[65] In 2008, plaintiff was diagnosed as mildly anxious and told her doctor that she only experienced anxiety "here and there, and not all the time."[66] Nor could the ALJ "find any diagnosis of anxiety separate from the seizures or any indication of how the anxiety restricts her ability to work other than that she is uncomfortable around people and feels stress because of the seizures."[67] As such, the ALJ determined that there was "no independent corroboration other than statements of the claimant showing that her seizures are triggered by stress or social interaction."[68]

Only after step four did the ALJ determine that plaintiff was not disabled because she is "capable of performing past relevant work as a fast food worker, cashier, and telephone solicitor."[69] In light of the foregoing, this court determines that the ALJ reasonably considered all severe impairments when reaching his disability determination.

---

[63](*Id.* at 14–17.)

[64](*Id.* at 14.)

[65](*Id.* at 16–17.)

[66](*Id.* at 17, 378.)

[67](*Id.* at 17.)

[68](*Id.* at 17.)

[69](*Id.*)

**C. The ALJ properly developed the record and based his credibility finding on substantial evidence, some of which supports the conclusion that plaintiff has been non-compliant with prescribed treatment**

Plaintiff asserts that the ALJ failed to base his credibility finding on substantial evidence,[70] failed to properly develop the record,[71] and improperly determined that plaintiff has been non-compliant with prescribed treatment.[72] Plaintiff is correct that the ALJ found plaintiff both non-compliant[73] and lacking credibility.[74] However, plaintiff is incorrect that such findings were not supported by substantial evidence and were improperly made.

An ALJ is expected to "consider all [the claimant's] symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as *consistent* with the objective medical evidence and other evidence."[75] This is merely another way of stating that an ALJ is expected to factor in a claimant's credibility when making a disability determination. The Social Security Administration ("SSA") echoed this assessment in Social Security Ruling ("SSR") 96-7p[76] by stating that "whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the

---

[70](Pl.'s Br. at 11.)

[71](*Id.*)

[72](*Id.* at 7.)

[73](AR 14 ("The claimant has been noncompliant with medications.").)

[74](*See id.* at 16 ("I do not find claimant's statements and allegations regarding the frequency and severity of her seizures, including those made to treating doctors, to be totally reliable, and they are weighted accordingly.").

[75]20 C.F.R. § 404.1529(a) (2011) (emphasis added).

[76]1996 WL 374186.

12

individual's statements based on a consideration of the entire case record."[77]

It is particularly important to note that findings of credibility are "peculiarly the province of the finder of fact," and such determinations will not be upset when supported by substantial evidence.[78] Indeed, the Tenth Circuit has stated that it "generally treat[s] credibility determinations made by an ALJ as binding upon review"[79] because "'[e]xaggerating symptoms or falsifying information for purposes of obtaining government benefits is not a matter taken lightly.'"[80]

Here, the ALJ had a difficult time substantiating plaintiff's claims of severity of impairment with the objective medical evidence.[81] Indeed, the ALJ noted—while referring to the administrative record—that there were "varying and contradictory reports about the frequency of the seizures and the effects of [plaintiff's] medications."[82] Accordingly, the ALJ engaged in a credibility assessment as required by SSR 96-7p.

In assessing credibility, SSR 96-7p requires the ALJ to "carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record."[83] SSR 96-7p states that the case record includes "objective medical evidence, the

---

[77]*Id.* at *2.

[78]*Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990).

[79]*Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988).

[80]*Id.* (quoting *Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983)).

[81](*See* AR 15 ("[T]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.").)

[82](*Id.* at 14.)

[83]1996 WL 374186, at *1.

individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record."[84] However, the ALJ's credibility determination need not be a "formalistic factor-by-factor recitation of the evidence."[85] Rather, the Tenth Circuit merely requires that the ALJ's "findings as to credibility . . . be closely and affirmatively linked to substantial evidence."[86]

Plaintiff argues the ALJ "summarily concluded" that plaintiff's statements were not reliable, and that such a "conclusory" finding violated SSR 96-7p.[87] This court disagrees with plaintiff, and holds that the ALJ properly developed the record in arriving at his findings.[88] The ALJ did this by referring to (1) plaintiff's own statements about symptoms, (2) statements and information provided by treating or examining physicians and other persons, and (3) other relevant evidence such as plaintiff's failure to comply with prescribed treatment.

### 1. Plaintiff's own statements about symptoms

In assessing a claimant's credibility an ALJ will consider "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the

---

[84]*Id.*

[85]*Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

[86]*Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (internal quotations omitted).

[87](Pl.'s Br. at 11.)

[88]"ALJs are not required to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning. The standard is one of reasonable good judgment. As such, an ALJ is generally entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored." *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009) (internal quotations and citations omitted).

claimant's] statements and the rest of the evidence."[89] Plaintiff's statements to the ALJ regarding the frequency of her symptoms were not always consistent with her previous statements and the rest of the evidence. Indeed, at the hearing, plaintiff testified that she suffers from grand mal seizures two or three times per month.[90] Plaintiff also testified that she suffers anywhere from two to four petit mal seizures in a given week.[91] Certainly, plaintiff's earlier and initial complaints to treating providers regarding her condition varied in their severity, with very few occasions being as frequent as she claimed in her testimony before the ALJ.

For example, the ALJ noted that plaintiff

reported on 8/26/2008 that she had not been on medication for 3 years and had about one seizure per month, but when she started taking medication she reported 2 per month, at the time she was seeking disability. On 2/3/2004 she was at subtherapeutic levels of medication and reported several seizures per week, but on 5/17/2004 she had been off medication for 1½ months and reported one seizure.[92]

The ALJ noted that in 2008 plaintiff reported to her physician that she had not taken medication for three years, and that during that time period, plaintiff had suffered about one seizure per month.[93] However, plaintiff contradicted her 2008 statement at the hearing when she testified that she suffers seizures more frequently when she is not taking medication, including one instance in which she suffered four or five grand mal seizures in a single month.[94]

In addition, plaintiff was sentenced to jail for six months, three months of which she

---

[89]20 C.F.R. § 404.1529(c)(4) (2011).

[90](AR 44.)

[91](*Id.* at 46.)

[92](*Id.* at 14.)

[93](*Id.* at 14, 377.)

[94](*Id.* at 46–47.)

served in jail, and the other three months of which she served at rehab and at home.[95] During those six months, the jail records indicate that plaintiff suffered only one seizure, which occurred in August 2004.[96] Insofar as this court could discern, after her August 2004 seizure, plaintiff did not suffer another seizure until February 2005,[97] which means that plaintiff did not suffer a seizure for six months. Contrary to the records, however, plaintiff estimated at the hearing that she suffered "[p]robably about four [seizures] in the time period [she] was there."[98]

In light of the foregoing, the court concludes that when comparing plaintiff's statements to the rest of the evidence, the ALJ properly found that there are contradictory reports about the frequency and effects of plaintiff's medications.

### 2. Statements and information provided by treating or examining physicians and other persons

The ALJ relied on plaintiff's many medical records supplied in the administrative record when arriving at his credibility assessment. These medical records contain statements and information dictated by plaintiff's treating or examining medical providers, and are based on plaintiff's subjective complaints.

For example, the ALJ relied on statements dictated to a medical record by advance practice registered nurse Kimberly A. Greaves, wherein Ms. Greaves noted that plaintiff had not taken medication for three years.[99] Ms. Greaves' dictation was subsequently reviewed by Dr.

---

[95](*Id.* at 63.)

[96](*Id.* at 385.)

[97](*Id.* at 280.)

[98](*Id.* at 64.)

[99](*Id.* at 14–15, 377, 380.)

Tricia Ferrin.[100] The ALJ also relied on statements dictated to medical records by certified nurse practitioner Virginia Mol.[101] The ALJ additionally relied on a statement by treating physician, David R. King, M.D., wherein Dr. King diagnosed plaintiff with "[s]eizure disorder secondary to noncompliance."[102]

The ALJ also considered statements helpful to plaintiff. For example, the ALJ considered nurse Mol's assessment in October 2008 that when plaintiff took Lamictal, plaintiff suffered four seizures within a month-and-a-half.[103] The ALJ noted that nurse Mol found that plaintiff had been on multiple medications in the past with no success.[104] The ALJ also took into account that in April 2005 plaintiff had been taking her medications as ordered, and had suffered one seizure during a month's time.[105]

### 3. Plaintiff's failure to comply with prescribed medication

Plaintiff alleges that the ALJ "improperly determined that plaintiff has been non-compliant with prescribed treatment."[106] Specifically, plaintiff asserts that the ALJ misapplied 20 C.F.R. § 416.930, SSR 82-59, and SSR 96-7p because "there is no definitive evidence of record that if she had followed such treatment that it would restore her ability to work."[107] It is true that

---

[100](*Id.* at 378.)

[101](*Id.* 14–16, 274, 282, 284–86, 331.)

[102](*Id.* at 15–16, 271.)

[103](*Id.* at 15, 380.)

[104](*Id.* at 14–15, 380.)

[105](*Id.* at 16, 276.)

[106](Pl.'s Br. at 7.)

[107](*Id.*)

SSR 82-59 and 20 C.F.R. § 416.930 require the ALJ to inquire whether prescribed treatment would restore one's ability to work. However, this same inquiry is also one of the Tenth Circuit's *Frey* factors.[108] The Tenth Circuit has held that *Frey* only concerns those circumstances under which an ALJ denies benefits because a claimant has refused to follow prescribed treatment.[109] This is not one of those circumstances.

In a circumstance such as this—where the ALJ wants to inquire as a to a claimant's compliance with prescribed treatment simply to assist in assessing the claimant's veracity—the Tenth Circuit has held that the ALJ can do so without applying the *Frey* factors.[110] As such, contrary to plaintiff's assertions, in a situation such as this where the ALJ is merely looking to plaintiff's use of medication to assess plaintiff's veracity, the ALJ need not assess whether the treatment at issue would restore plaintiff's ability to work.[111]

Regardless of whether the *Frey* factors should be considered, in instances where the claimant is not following prescribed treatment, the ALJ should still consider any attempts by a claimant to relieve her symptoms.[112] Doing so will assist the ALJ in evaluating a claimant's

---

[108]*Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987).

[109]*Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

[110]An ALJ may "properly consider[] what attempts plaintiff made to relieve" her symptoms—including whether she took pain medication—"in an effort to evaluate the veracity of plaintiff's contention that [her impairment] was so severe as to be disabling." *Id.*

[111]*Cf. id.* ("Plaintiff's reliance on our opinion in *Frey* is misplaced, because *Frey* concerned the circumstances under which an ALJ may deny benefits because a claimant has refused to follow prescribed treatment.").

[112]*Cf. id.*

contention that her impairment is so severe as to be disabling.[113]

Although plaintiff correctly points out that under certain circumstances, the agency's regulations and rulings provide that a claimant should be given an opportunity to fully express the specific reasons for not following prescribed treatment,[114] she invokes inapplicable legal standards. Specifically, plaintiff invoked SSR 82-59, which describes the "criteria necessary for a finding of failure to follow prescribed treatment when evaluating disability under titles II and XVI of the Social Security Act and implementing regulations."[115]

What plaintiff fails to understand is that SSR 82-59 can only be invoked once the ALJ has determined that the claimant has a "*disabling impairment* which is amenable to treatment that could be expected to restore their ability to work."[116] Here, the ALJ never determined that plaintiff has a disabling impairment, nor did he determine whether any treatment of that impairment could be expected to restore plaintiff's ability to work. Accordingly, in this instance SSR 82-59 is inapposite.

20 C.F.R. § 416.930 is equally inapplicable. Section 416.930 states that a claimant "must follow treatment prescribed" by their "physician *if this treatment can restore*" the claimant's ability to work.[117] As such, § 416.930 is only applicable once an ALJ has determined that the prescribed treatment will restore the claimant's ability to work. Here, the ALJ was unable to

---

[113]*See id.*

[114]*See* 20 C.F.R. §§ 404.1530(c), 416.930(c) (2011); *see also* SSR 82-59, 1982 WL 31384.

[115]1982 WL 31384, at *1.

[116]*Id.*

[117]20 C.F.R. § 416.930 (emphasis added).

determine whether the prescribed treatment would restore plaintiff's ability to work. Indeed, after considering the evidence in the record, he found that "[t]here is no way of predicting what the frequency of seizures would be if she were at a higher dosage."[118]

Finally, plaintiff argues that the ALJ misapplied SSR 96-7p, and in her opening and reply briefs provides quotes ostensibly taken therefrom. However, plaintiff did not provide the court with citations to page numbers from which the quotes were taken.[119] Specifically, plaintiff argues that the ALJ misapplied SSR 96-7p because the ALJ drew inferences about plaintiff's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the plaintiff provided, or other information in the case record, that may have explained plaintiff's non-compliance with prescribed treatment.[120]

Plaintiff correctly states that SSR 96-7p counsels an ALJ to consider a claimant's explanations for non-compliance, two of which may be the following: (1) "[t]he individual may not take prescription medication because the side effects are less tolerable than the symptoms"; and (2) "[t]he individual may be unable to afford treatment and may not have access to free or low-cost medical services."[121]

Plaintiff must understand that the operative word in SSR 96-7p is "consider[]."[122] In arriving at a credibility determination, the ALJ need only *consider* explanations provided by the

---

[118](AR 16.)

[119](*See* Pl.'s Br. at 8); (*see also* Pl.'s Reply Br., filed Nov. 24, 2011 (dkt. no. 25) ("Reply Br."), at 7.)

[120]*See* SSR 96-7p, 1996 WL 374186, at *7.

[121]*Id.* at *8.

[122]*Id.* at *7.

claimant. The ALJ need not consider *and* accept as conclusive the claimant's explanations. Further, as the court has already noted, findings of credibility are "peculiarly the province of the finder of fact," and such determinations will not be upset when supported by substantial evidence.[123]

Indeed, the ALJ stated that he considered all of the evidence.[124] In this regard, the Tenth Circuit has held that its "general practice . . . is to take a lower tribunal at its word when it declares that it has considered a matter."[125] Further, the record here shows that the ALJ considered plaintiff's explanations, but apparently did not find them persuasive. For example, at the hearing, the ALJ inquired as to how plaintiff pays for her prescribed medication, and plaintiff stated that she pays four dollars a month—money which she obtains from her father—for generic medications at Wal-Mart.[126]  The ALJ also considered plaintiff's testimony regarding plaintiff's inability to afford a consultation with a neurologist,[127] as well as evidence demonstrating that there were times in the past that plaintiff was unable to afford medication.[128]

Plaintiff also states that she "testified at hearing that her seizures have gotten worse; starting off with petit mal seizures and turning into grand mal seizures despite taking

---

[123]*Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990).

[124](AR 11 ("After careful consideration of all the evidence . . . the undersigned concludes the claimant has not been under a disability within the meaning of the Social Security Act from December 31, 2004, through the date of this decision.").)

[125]*Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).

[126](AR 34.)

[127](*Id.* at 15, 36.)

[128](*Id.* at 46.)

medication."[129] Although plaintiff's representation may be true, it is nonetheless inapplicable because the inquiry in SSR 96-7p asks whether the side effects of the prescription medication are less tolerable than claimant's symptoms.[130] Plaintiff fails to make such an assertion in her pleadings. She merely states that "despite taking medication" her seizures have gotten worse,[131] and that "she has difficulty with most of her medications,"[132] both of which do not equate to allegations that the medications' side effects are less tolerable than her original symptoms.

The court will independently note, however, that on August 26, 2008, plaintiff told Dr. Kimberly Greaves that she did not like the seizure medication Tegretol because of the way the medication made her feel, and that plaintiff was having more seizures while on the medication.[133] At the hearing, plaintiff testified that "Tegretol has been the best so far. I don't agree with it, but I have to take what I have to take."[134] However, at that same hearing, plaintiff also testified that she does not have any problems with being groggy or tired when taking Tegretol.[135] Plaintiff further testified that she has the least seizures when taking Tegretol.[136] Although the foregoing testimony indicates that at times plaintiff may not like taking Tegretol, it certainly does not demonstrate that the side effects of Tegretol are less tolerable than plaintiff's symptoms.

---

[129](Reply Br. at 7.)

[130]*See* SSR 96-7p, 1996 WL 374186, at *8.

[131](Pl.'s Br. at 9.)

[132](*Id.* at 8)

[133](AR 377.)

[134](*Id.* at 62.)

[135](*Id.* at 46.)

[136](*Id.* at 35.)

Further, although the ALJ incorrectly found that plaintiff did not suffer any seizures while incarcerated,[137] the ALJ's reliance on plaintiff's seizure history while in jail is certainly well-founded. In August 2004 plaintiff suffered a seizure while in jail,[138] at which point her medication was changed.[139] Once her medication was changed and plaintiff had been released from jail, plaintiff visited her doctor in December 2004, and stated that she had not suffered a seizure since her medication was changed.[140] Therefore, at the time plaintiff visited her doctor in December 2004, she had not suffered a seizure for nearly four months. Insofar as this court could discern, after her August 2004 seizure, plaintiff did not suffer another seizure until February 2005,[141] which means that plaintiff went six months without suffering a seizure.

Further, this court agrees with the ALJ that plaintiff's incarceration is most likely the time when she was in total compliance with prescribed treatment.[142] Indeed, plaintiff acknowledged that during her three months in the county jail, the sheriff was making sure that plaintiff received her medication.[143] The ALJ also noted that in August 2008, plaintiff told a doctor that she had not taken medication for three years. In light of the foregoing, this court finds that the ALJ properly determined that plaintiff was non-compliant with prescribed treatment.

In light of the foregoing, this court finds that the ALJ properly assessed plaintiff's

---

[137](AR 16.)

[138](*Id.* at 385.)

[139](*Id.* at 282.)

[140](*Id.*)

[141](*Id.* at 280.)

[142](*Id.* at 16.)

[143](*Id.* at 63.)

credibility.

### D. The ALJ properly determined plaintiff's residual functional capacity in that such determination is supported by substantial evidence

At the fourth step, the ALJ will consider his assessment of the claimant's residual functional capacity and the claimant's past relevant work. If the claimant can still do her past relevant work, the ALJ will find that the claimant is not disabled.[144] Like all steps of the ALJ's decision-making process, the court will review the factual findings at this step to determine whether the ALJ's analysis was based on substantial evidence, and whether correct legal standards were applied.[145]

Relying on the vocational expert's testimony, the ALJ determined that plaintiff "is capable of performing past relevant work as a fast food worker, cashier, and telephone solicitor."[146] The ALJ determined that plaintiff was not disabled based on that finding.[147]

Plaintiff challenges the ALJ's residual functional capacity assessment on the grounds that the ALJ did not accept opinions offered by claimant's treating physicians, and instead relied on the medical expert's testimony.[148] Plaintiff also alleges that the ALJ's residual functional capacity assessment "does not take into consideration the 'limiting effects of all . . . impairment(s), even those that are not severe' as required by 20 C.F.R. § 404.1545(e) and SSR 96-8p."[149]

---

[144] 20 C.F.R. § 404.1520(a)(4)(iv) (2011).

[145] *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[146] (AR 17.)

[147] (*See id.*)

[148] (Pl.'s Br. at 10.)

[149] (*Id.*)

In addition, plaintiff states that the regulations require an ALJ to consider statements provided by family and other persons regarding limitations caused by symptoms.[150] Specifically, plaintiff argues that the ALJ improperly failed to consider statements from plaintiff's brother as to the severity of plaintiff's symptoms.[151] As this court has already noted, the Tenth Circuit's general practice "is to take a lower tribunal at its word when it declares that it has considered a matter."[152] The ALJ stated that he considered all the evidence,[153] which would necessarily include statements made by plaintiff's brother. However, the court does acknowledge that in his decision the ALJ made no specific mention regarding statements made by plaintiff's brother.

Plaintiff's brother—Danny Martinez—provided a written statement to the State of Utah wherein he estimated that plaintiff's suffers seizures "about once a month sometimes as often as two to three a week."[154] This offers little help to plaintiff as she testified that she suffers two to three grand mal seizures per month and two to four petit mal seizures per week,[155] which is a significantly greater frequency than Mr. Martinez's estimate. Accordingly, any alleged failure by the ALJ to consider Mr. Martinez's testimony is harmless error because the ALJ appropriately considered plaintiff's testimony, which alleges more frequent symptoms.

Plaintiff also alleges that the ALJ erred by (1) relying on the medical expert's testimony,

---

[150](*Id.* at 10–11.)

[151](*Id.* at 11.)

[152]*Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).

[153](AR 11.)

[154](*Id.* at 220.)

[155](*Id.* at 44, 46.)

and (2) failing to "accept the opinions offered by claimant's treating physicians."[156] Curiously, plaintiff does not identify or describe the treating physicians and opinions at issue, nor does she explain how the ALJ erred in his evaluation of the opinions. The Tenth Circuit has held that when an appellant fails to support arguments with any authority, legal or otherwise, the argument need not be considered.[157] The Tenth Circuit has also held that when a party "lists an issue, but does not support the issue with argument, the issue is waived."[158] Accordingly, the court finds that plaintiff has waived these arguments, and they need not be considered.

Plaintiff further asserts that the ALJ's residual functional capacity assessment was not "based on all the relevant evidence in the case record."[159] Specifically, plaintiff points to testimony of Dr. Morrison—the medical expert—wherein Dr. Morrison stated that a person who suffers from two to four grand mal seizures per month would be unable to hold down a full time job.[160] Plaintiff also points to Dr. Morrison's additional testimony wherein he stated that a person who suffers one grand mal seizure per month would have borderline ability to hold down a full time job, and would have to be in a non-public environment that could accommodate seizure activity.[161]

The ALJ appropriately gave no weight to these opinions as they were outside the realm of

---

[156](Pl.'s Br. at 10.)

[157]*See Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001).

[158]*See Wall v. Astrue*, 561 F.3d 1048, 1065 (10th Cir. 2009).

[159](Pl.'s Br. at 10 (citing SSR 96-8p).)

[160](AR 52.)

[161](*Id.* at 52–53.)

the doctor's expertise.[162] Indeed, the judgment by a medical source "regarding the extent to which an individual is able to perform exertional ranges of work goes beyond medical judgment regarding what an individual can still do and is a finding that may be dispositive of the issue of disability."[163]

Plaintiff also argues that the ALJ's residual functional capacity assessment "does not take into consideration the 'limiting effects of all . . . impairment(s), even those that are not severe' as required by 20 C.F.R. § 404.1545(e) and SSR 96-8p."[164] The court addressed this argument in Part II.B. above, and held that the ALJ reasonably accommodated plaintiff's impairments in his residual functional capacity finding.

In light of the foregoing, the court finds that the ALJ properly determined plaintiff's residual functional capacity, and based his findings on substantial evidence.

---

[162](*Id.* at 16.)

[163]SSR 96-5p, 1996 WL 374183, at *5; *see also Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) ("Whether a claimant can work sedentary work is a question for a vocational expert, not a medical source.").

[164](Pl.'s Br. at 10.)

### III. CONCLUSION

Having determined that the Commissioner's decision is based on substantial evidence and free of prejudicial error, IT IS HEREBY ORDERED that the decision of the Commissioner is **AFFIRMED**.

IT IS FURTHER ORDERED that judgment shall be entered in accordance with Fed. R. Civ. P. 58.[164]

DATED this _14th_ day of June, 2012.

BY THE COURT:

BRUCE S. JENKINS
United States Senior District Judge

---

[164]*See Shalala v. Schaefer*, 509 U.S. 292, 296–302 (1993).

28